# RONALD EDWARD JOHNSON, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 455 S.W.2d 652.

Court of Criminal Appeals of Tennessee. April 3, 1970.

Certiorari Denied by Supreme Court June 1, 1970.

Carter Schoolfield, Schoolfield & Taylor, Chattanooga, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., John Jerry Foster, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

MITCHELL, Judge.

Ronald Edward Johnson, who will be referred to as the defendant or by name, has appealed a conviction of concealing stolen property and a sentence of three to seven years in the penitentiary from the Criminal Court of Hamilton County, Honorable Campbell Carden, Judge, presiding. The defendant in error will be referred to as the state.

On the night of May 28, 1968, Mrs. Charlene Cheschire who has been divorced and is now Miss Charlene Rogers, was living alone in her apartment in Normandy Apartments. She left the apartment about 7:30 P.M., went to dinner with friends and returned about 11:30 P.M. The next morning she discovered her diamond engagement ring valued at $750.00, a wedding band, a

watch, and another diamond ring, in all, of the value of $1375.00, had been stolen. Miss Rogers reported the theft to Chief W. H. Henry of the City of Redbank Police Department who started an investigation. There was no evidence of any forced entry of the apartment. Miss Rogers was employed by Snelling & Snelling Personnel where she had been for five years. A Miss Brenda Brown who had been sent to be interviewed, as a receptionist, for the people who employed Miss Rogers, had previously shared the apartment with Miss Rogers for about three weeks but she had moved two months before the ring disappeared. Miss Rogers testified Miss Brown works in the office, that she saw her Wednesday. Miss Rogers did not know the defendant during that time, so far as she knew the defendant had not been in her apartment. She had seen him at one time in their office, 521 Pioneer Bank Building. He was talking to Miss Brown. Miss Rogers did not hear the conversation.

About July 13, 1968, the defendant offered to sell the diamond engagement ring in question to Mr. Brady Pless who was not interested in the ring but assisted the defendant in selling it to Dr. K. Y. Maxwell for $375.00.

Two or three days later, on a call from an informer, Chief W. H. Henry asked Dr. Maxwell about the ring and took Miss Charlene Rogers to Dr. Maxwell's office where she identified the ring as her property which had been stolen from her. Miss Rogers and Chief Henry then took it to Fischer-Evans Jewelry Company, who also identified it as Miss Roger's engagement ring. They also valued the ring at $700.00 to $750.00.

Dr. Maxwell surrendered the ring, and Mr. Pless reimbursed the doctor.

Mr. Pless testified about talking with the defendant as follows:—

"I think he called back later, and I told him, I said, why didn't you tell me the ring was hot? Something to that effect. And then, I mean, you know, I just didn't care about talking to him anymore."

The defendant did not reimburse Mr. Pless nor did he tell Mr. Pless where he got the ring.

At the close of the State's proof the defendant made a motion for a directed verdict of not guilty which was sustained as to the first count and the jury was directed to return a verdict of not guilty of receiving stolen property as charged in the first count of the indictment.

The defendant testified and denied his guilt. He admitted he sold the ring to Dr. K. Y. Maxwell with the help of Brady Pless who actually paid him for the ring. The defendant offered as an explanation for having the ring that he bought it from Donald Bailey and paid $400.00 for it. That he gave the ring to his wife but a short time later decided he needed a truck and he sold the ring to Mr. Pless and Dr. Maxwell for $375.00 to make a payment on a truck. That he had not, prior to the trial, told anyone about buying the ring from Donald Bailey, that nobody had asked him.

Defendant testified he had never been in the apartment of Miss Rogers, that he did not take her ring. That he did not know it was stolen when he sold it.

The defendant introduced Donald Bailey who was sworn as a witness and testified he was twenty-five years of age, lived at 608 Cherokee Boulevard and that he was

acquainted with the defendant Ronald Johnson. When asked if in June or July he had occasion to sell Ronald Johnson a diamond ring, he answered, "My answer might incriminate me. I refuse to answer." He was asked if he got possession of a diamond ring back at that time, and he refused to answer.

On cross examination he admitted he had been charged with burglary in 1960 and pleaded guilty of two cases of petit larceny.

The defendant did not call his wife as a witness in his behalf.

The jury reported a verdict of guilty of concealing stolen property of a value in excess of $100.00 and fixed the punishment at not more than seven years in the penitentiary on which the Court pronounced judgment of not less than three nor more than seven years in the penitentiary.

After the motion for a new trial had been overruled the defendant appealed in error to this Court.

The defendant's assignment of error No. 1 is that the Court erred in charging the jury that the possession of recently stolen goods raises a presumption of guilt as to receiving stolen property. The Court charged that the general presumption of law that a person in recent possession of stolen property unexplained, is presumed to be the thief, and it is respectfully submitted that this charge is error.

The diamond engagement ring in this case was stolen about May 28, 1968, and was sold by the defendant about July 13, 1968. The defendant was arrested a few

days later on the charge of receiving and concealing stolen property. He was tried January 29, 1969. Thus, there was a period of six months in which the defendant could have explained how he came into possession of the stolen ring. According to his testimony he did not tell anybody, other than his counsel, that he bought it from Donald Bailey, until he testified in the trial, then the man from whom he said he bought the ring took the witness stand and refused to answer about the ring on the ground his answer might incriminate him. Whatever else this strategy was, it did not arise to the dignity of credible evidence.

In contrast to the defendant's conduct is that of Dr. Maxwell and Brady Pless. Dr. Maxwell and Mr. Pless were known to each other. Dr. Maxwell was a prominent professional man and Mr. Pless a responsible business man. When they were questioned about the ring, they immediately made a full and complete explanation of how they came into possession of the ring, cooperated with the police, and did everything they could to restore the stolen property to the owner. On the other hand, the defendant withheld his explanation until called to the witness stand in his trial.

We think the facts and circumstances surrounding the receipt and concealment of the property in this case was such as would charge a reasonable man with notice or knowledge or would put a reasonable man on inquiry as to the source of this stolen property.

In Tackett v. State, Tenn., 443 S.W.2d 450, 452, Mr. Justice Allison B. Humphreys quoted with approval from

the opinion in Kessler v. State, 220 Tenn. 82, 414 S.W. 2d 115, and declared as follows:—

"* * * This unsatisfactorily explained possession of most recently stolen property would have supported a conviction for larceny. Parham v. State, supra [78 Tenn. 498]. The jury evidently felt warranted in foregoing this verdict in favor of the receiving and concealing count, because there was no direct evidence that Tackett broke and entered and carried away the property. However, this character of possession clearly warrants the inference, in the absence of a reasonable and honest explanation, that Tackett received the property with guilty knowledge of its theft.

"(3) While it is the rule as first held in Wright v. State, supra [13 Tenn. 154], and as restated in Kessler, that guilty knowledge is necessary to sustain a conviction for receiving and concealing stolen property, it must also be the rule, because logic and good judgment require it, that the unexplained exclusive possession of stolen property shortly after commission of the robbery may warrant a finding that the possessor has guilty knowledge of the larceny or robbery. And unless this exclusive possession of stolen property after larceny or robbery is accounted for in a straightforward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, the jury would be warranted in returning a verdict of guilty of receiving and concealing stolen property."

In Peek v. State, 213 Tenn. 323, 375 S.W.2d 863, 865, Mr. Justice Sam L. Felts speaking for the Court had this to say:—

"(2) First, in this State we follow the generally approved rule that proof of possession of recently stolen goods gives rise to the inference that the possessor has stolen them. 2 Wharton, Criminal Law, 31, sec. 411 (1954); Hughes v. State, 27 Tenn. 75, 76-77 (1847); Cook v. State, 84 Tenn. 461, 464, 1 S.W. 254 (1886). A good statement of this rule is found in Shaw v. State, 1 Tenn.Cas. 77, 78 (1858), where the Court said:

"'Greenleaf sec. 34, states the rule to be, "that the possession of the fruits of crime recently after its commission" raises a presumption of guilt, prima facie only, of course. This single fact, if unexplained by direct evidence, the attending circumstances, good character or otherwise, will be conclusive.'

"(3) Secondly, this Court has held that after the corpus delicti (the theft in this case) has been proved beyond a reasonable doubt, circumstantial evidence may itself be sufficient proof on which to base a conviction. Smith v. State, 205 Tenn. 502, 522, 327 S.W. 2d 308 (1958); Foster v. State, 180 Tenn. 164, 172, 174, 172 S.W.2d 1003 (1942). And we think the circumstantial evidence pointing to defendant's guilt in this case is overwhelming."

We are of the opinion there was no error in the charge of the trial court.

Assignment of error No. 2 is that it is further urged and submitted that there was no evidence to support the verdict in this cause, and that there was no showing that the defendant concealed the property, knowing that the

same was stolen, the record is completely devoid of any circumstances under which the defendant had, or possessed said property with guilty knowledge, or that he received said property with guilty knowledge.

In considering this assignment of error attention is directed to the pertinent facts which we have heretofore recited in this opinion. In our review of these facts we are bound by the rule announced by our Supreme Court, that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction, disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Monts v. State, 218 Tenn. 31, 400 S.W.2d 722; Patterson v. State, 218 Tenn. 80, 400 S.W.2d 743; Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32."

The defendant has failed to carry the burden of

showing that the evidence preponderates against the verdict and in favor of his innocence.

We think that under the facts and circumstances of this case the guilt of the defendant has been clearly established.

The assignments of error are overruled and the judgment is affirmed.

WALKER, P. J., and HYDER, J., concur.